## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **ANGELIQUE HOVEY,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | |
| **METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY,** | **Case No. 2:21-cv-00120-JCB** |
| **Defendant.** | **Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment.[1] Before the court is Defendant Metropolitan Group Property and Casualty Insurance Company's ("Metropolitan") motion for summary judgment.[2] The court has carefully reviewed the parties' respective written submissions and their accompanying exhibits. The court has also considered the points that the parties' counsel presented at oral argument on December 21, 2022.[3] Based upon the analysis set forth below, the court grants Metropolitan's motion for summary judgment and dismisses this action with prejudice.

---

[1] ECF Nos. 10, 12.

[2] ECF No. 19.

[3] ECF No. 35.

**UNDISPUTED MATERIAL FACTS**

Plaintiff Angelique Hovey ("Ms. Hovey") purchased an insurance policy ("Policy") from Metropolitan to insure her home located at 4068 Sleeping Hollow Dr., Eagle Mountain, Utah 84005 ("Property").[4] Ms. Hovey was listed as the insured under the Policy, which was in effect at the time of the events described below.[5]

**I.   Damage to the Property**

On the evening of December 5, 2020, Ms. Hovey, her children, and Evan Makin ("Mr. Makin") heard a loud "crack" coming from the southwest corner of the Property's living room.[6] To investigate the noise, Ms. Hovey and Mr. Makin exited the front door and walked to the southwest corner of the Property where they discovered that the outdoor sprinkler box, located in the same area in which they heard the noise, was full of water and was spraying.[7] The water from the sprinkler box appeared to be draining directly under the Property.[8] After shutting off the sprinkler valve, Ms. Hovey, her children, and Mr. Makin, began to hear "cracking and creaking type noises coming from all around the house, inside the walls, and ceiling. The drywall then started to crack . . . ."[9] The following day, "the cracking in the drywall had become much more extensive and was present in most rooms of the house, including the garage[,] as well as several

---

[4] ECF No. 5-1 at 2; ECF No. 19-3.

[5] ECF No. 5-1 at 2; ECF No. 19-3 at 2 of 57.

[6] ECF No. 19-4 at 12 of 13.

[7] *Id.*

[8] *Id.*

[9] *Id.*

new cracks to the cement in the garage, and cracks in the tile grout in the kitchen. The front and side doors were also[] no longer operable."[10]

Ms. Hovey's January 2021 utility bill from Eagle Mountain City indicated that the Property used approximately 39,000 gallons of water from November 18, 2020, to December 16, 2020.[11] Ms. Hovey's utility bill from Eagle Mountain City for the period of October 16, 2020, to November 18, 2020—the month prior to the sprinkler line break—indicated that the Property used approximately 4,000 gallons of water.[12]

## II.    Insurance Claim Investigation

Metropolitan received a claim from Ms. Hovey on December 6, 2020 ("Claim").[13] On December 9, 2020, an outside adjuster, Nathanael Stakland ("Mr. Stakland"), inspected the Property and took photographs of the damage.[14] Mr. Stakland recommended that an engineer inspect the Property,[15] and Metropolitan subsequently retained an independent engineering firm, EFI Global ("EFI"), to do so.[16]

On December 18, 2020, Ryan Mikesell ("Mr. Mikesell"), an EFI forensic engineer, met with Ms. Hovey and Mr. Makin to discuss background information regarding the damage to the Property.[17] This included: a site inspection; conversations with Ms. Hovey and Mr. Makin;

---

[10] *Id.*

[11] ECF No. 19-6 at 2 of 2.

[12] ECF No. 19-7 at 2 of 2.

[13] ECF No. 19-9 at 6 of 12.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 6-7 of 12.

[17] *Id.* at 7.

taking pictures of and noting the damage to the Property; conducting a floor elevation survey to determine the extent of the settling/subsidence; reviewing potential alternate causes of the damage to the Property; and reviewing utility bills to determine the amount of water discharged under the Property.[18]

Metropolitan received a report from Mr. Mikesell on January 12, 2021.[19] Mr. Mikesell's 31-page report, which was based upon his investigation, included the following conclusions:

1. The irrigation line broke and saturated the soils at the southwest quadrant [of the Property] with approximately 35,000 gallons of water.

2. The saturated soils lost load carrying capacity and consolidated which caused the dwelling to subside which resulted in multiple damages.

3. The irrigation line break was consistent with being caused by frozen water expansion.

4. It is recommended that a foundation stabilization contractor be engaged to remedy the settlement.[20]

Metropolitan informed Ms. Hovey by email that Mr. Mikesell's report had been provided and that a coverage decision would be finalized by January 14, 2021.[21]

By the date promised, Metropolitan determined that, based upon its investigation, the Claim was not covered under the Policy.[22] Metropolitan informed Ms. Hovey of its decision on

---

[18] *Id.*

[19] *Id.* at 8 of 12.

[20] ECF No. 19-8 at 8 of 32.

[21] ECF No. 19-9 at 8 of 12.

[22] *Id.*

the Claim the same day.[23] Ms. Hovey requested a copy of Mr. Mikesell's report.[24] The following day, Metropolitan provided Ms. Hovey with a written denial,[25] which provides that, based upon the Policy language, "the damage to [the Property] due to earth movement, settling, cracking of foundations, footings, supports, walls[,] floors, roof or ceilings is not covered" by the Policy.[26]

## III.    The Policy

The Policy divides coverage into three categories: "COVERAGE A – DWELLING," "COVERAGE B – PRIVATE STRUCTURES," and "COVERAGE C – PERSONAL PROPERTY."[27] Endorsement HP3500 0904 to the Policy governs causes of property loss and further divides coverage under the Policy into three sections: "LOSSES WE COVER (COMPHREHENSIVE PERILS)," "BROAD NAMED PERILS," and "LOSSES WE DO NOT COVER."[28]

Under the LOSSES WE COVER section, Metropolitan agreed to "pay for sudden and accidental direct physical loss or damage to the property described in Coverages, A, B and C, except as excluded in . . . LOSSES WE DO NOT COVER."[29] The BROAD NAMED PERILS section lists sixteen "causes of loss [that] will apply for sudden and accidental direct physical loss," subject to the exclusions listed in the LOSSES WE DO NOT COVER section.[30] Finally,

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] ECF No. 19-10 at 4 of 4.

[27] *See generally* ECF No. 19-3.

[28] *Id.* at 21-27 of 57.

[29] *Id.* at 21 of 57.

[30] *Id.* at 21-22 of 57.

the LOSSES WE DO NOT COVER section outlines the exclusions that preclude coverage described in Coverages A-C.[31]

The following provisions are relevant in this action. First, the BROAD NAMED PERILS section provides the following definition of the relevant Broad Named Peril:

> 12. **Discharge or Overflow of Water or Steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance. The loss must be sudden and accidental. . . .
>
> **We** do not pay for loss:
>
> . . .
>
> B.  caused by or resulting from freezing under this peril . . . .[32]

Second, the LOSSES WE DO NOT COVER section provides the following introductory paragraph and relevant exclusion related to earth movement ("Earth Movement Exclusion"):

> 1. **We** do not insure under any . . . coverage [(for LOSSES WE COVER and BROAD NAMED PERILS)] for any loss which would not have happened in the absence of one or more of the following excluded events. **We** do not insure for any such loss regardless of:
>
> (a) the cause of the excluded event;
>
> (b) other causes of the loss; or
>
> (c) whether such causes acted at the same time or in any other sequence with the excluded event to produce or to contribute to the loss.
>
> These exclusions apply whether or not the excluded event results in widespread or affects a substantial area. The excluded events are listed below.

---

[31] *Id*. at 22-27 of 57.

[32] *Id*. at 22 of 57.

. . . .

    E.  **Earth Movement**, meaning any loss caused by resulting from, contributed to or aggravated by events that include, but are not limited to:

        . . .

        4.  subsidence;

        . . .

        6.  erosion . . . ;

        7.  the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth, soil or land;

        . . . .

        This exclusion applies whether or not the earth movement is combined with water or caused by or results from human or animal forces or any act of nature.[33]

Finally, the LOSSES WE DO NOT COVER section provides the following introductory paragraph and relevant exclusion ("Exclusion 3"):

    2.  **We** do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

        . . . .

---

[33] *Id*. at 22, 24 of 57.

3. **We** do not cover loss or damage to the property described in Coverage A, Coverage B and Coverage C which results directly or indirectly from any of the following:

. . .

C. settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations, footings, supports, walls, floors, roofs, or ceilings . . . .[34]

## IV.   Procedural History

Based upon Metropolitan's denial of the Claim, Ms. Hovey initiated this action against Metropolitan in Utah state court on February 8, 2021, asserting causes of action for breach of contract and breach of the covenant of good faith and fair dealing.[35] Metropolitan removed the action to this court on March 1, 2021,[36] and answered Ms. Hovey's complaint on March 8, 2021.[37] After fact discovery closed, the parties filed a stipulated motion to stay the remaining deadlines in the operative scheduling order pending the outcome of summary judgment proceedings.[38] The court granted that motion on May 27, 2022.[39] On August 2, 2022, Metropolitan filed the motion for summary judgment currently before the court.[40]

---

[34] *Id*. at 24-25 of 57.

[35] *See generally* ECF No. 5-1.

[36] ECF No. 2.

[37] ECF No. 9.

[38] ECF No. 17.

[39] ECF No. 18.

[40] ECF No. 19.

## LEGAL STANDARDS

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A genuine issue of fact exists only where 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[41] "Thus, the relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[42]

In evaluating a motion for summary judgment, the court "view[s] the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor."[43] "'The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.'"[44] If the movant does not bear the burden of proof at trial as to the claims for which it seeks summary judgment, then the movant "may make its prima facie demonstration by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim."[45]

---

[41] *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[42] *Id.* (quoting *Anderson*, 477 U.S. at 251-52).

[43] *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).

[44] *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (quoting *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007)).

[45] *Libertarian Party of N.M.*, 506 F.3d at 1309 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *see also Savant Homes, Inc.*, 809 F.3d at 1137.

"If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant."[46] To satisfy its burden, "the nonmovant must identify facts 'by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.'"[47] "These facts must establish, at a minimum, an inference of the presence of each element essential to the case."[48] Entry of summary judgment is required,

> after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.[49]

"In this diversity case governed by Utah law, [the court] must ascertain and apply Utah law such that [the court] reach[es] the same result that the Utah courts would reach."[50] "Under Utah law, insurance policies are construed using general contract principles."[51] "The

---

[46] *Libertarian Party of N.M.*, 506 F.3d at 1309 (citing *Celotex Corp.*, 477 U.S. at 324) (quotations and other citations omitted); *see also Savant Homes, Inc.*, 809 F.3d at 1137.

[47] *Savant Homes, Inc.*, 809 F.3d at 1137 (quoting *Libertarian Party of N.M.*, 506 F.3d at 1309).

[48] *Id.* at 1137-38 (quotations and citations omitted).

[49] *Celotex Corp.*, 477 U.S. at 322-23 (quotations omitted).

[50] *Utah Power & Light Co. v. Fed. Ins. Co.*, 983 F.2d 1549, 1553 (10th Cir. 1993).

[51] *Id.* (citing *Bergera v. Ideal Nat'l Life Ins. Co.*, 524 P.2d 599, 600 (Utah 1974)); *see also Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993) ("An insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts."); *Vill. Inn Apartments v. State Farm Fire & Cas. Co.*, 790 P.2d 581, 582

interpretation of an unambiguous contract is a question of law to be determined by the court and may be decided on summary judgment."[52] "If the policy language is clear and unambiguous, the court must construe it according to its plain and ordinary meaning."[53]

**ANALYSIS**

Metropolitan is entitled to summary judgment on Ms. Hovey's claims for breach of contract and breach of the covenant of good faith and fair dealing. After analyzing each claim below, the court grants Metropolitan's motion for summary judgment and dismisses this action with prejudice.

## I.   Breach of Contract

Metropolitan did not breach the Policy[54] by denying the Claim for two reasons. First, the cause of the damage to the Property (i.e., the broken outdoor sprinkler line on the Property) is not a Broad Named Peril under the Policy. Second, even assuming that the cause of the damage to

---

[52] *Utah Power & Light Co.*, 983 F.2d at 1553 (citing *Morris v. Mountain States Tel. & Tel. Co.*, 658 P.2d 1199, 1201 (Utah 1983)).

[53] *Id.* (citing *Draughon v. CUNA Mut. Ins. Soc'y*, 771 P.2d 1105, 1108 (Utah Ct. App. 1989)); *see also Alf*, 850 P.2d at 1274 (providing that in an unambiguous insurance policy, "the policy language is construed according to its usual and ordinary meaning"); *Vill. Inn Apartments*, 790 P.2d at 583 (providing that if insurance "policy terms are clear and unambiguous," the court must "interpret those terms in accordance with their plain and ordinary meaning, as they would be understood by the average, reasonable purchaser of insurance" (quotations and citations omitted)).

[54] Under Utah law, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Richards v. Cook*, 2013 UT App 250, ¶ 7, 314 P.3d 1040 (quotations and citation omitted). Here, the parties' arguments are focused exclusively on the third element (i.e., breach of the Policy). Accordingly, the court addresses only that element here.

the Property qualifies as a Broad Named Peril, the damage is excluded from coverage under the Policy. Each reason is discussed below and demonstrates why Metropolitan is entitled to summary judgment on Ms. Hovey's breach of contract claim.

A.   The Cause of the Damage to the Property Is Not a Broad Named Peril.

The cause of the damage to the Property is not a Broad Named Peril because: (1) the only waterworks mentioned as a Broad Named Peril are "inside" a structure, which necessarily excludes outdoor sprinklers; and (2) even if a Broad Named Peril includes exterior irrigation lines, frozen pipes are outside the definition of Broad Named Perils. Therefore, as shown in order below, the cause of Ms. Hovey's damages is not a covered peril under the Policy regardless of the Policy's exceptions to coverage.

1.   Sprinkler Lines Are Not Covered as a Broad Named Peril Because They Are Outside the Home.

The cause of the damage to the Property does not meet the definition of the Broad Named Peril at issue, which is entitled, "Discharge or Overflow of Water or Steam."[55] That Broad Named Peril provides coverage for losses caused by discharge or overflow of water or steam "from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance."[56] A "plumbing system" is the only conceivable category that would encompass the broken outdoor sprinkler line that caused the damage to the Property. Because a "plumbing system" is not defined in the Policy, the court construes that unambiguous

---

[55] ECF No. 19-3 at 22 of 57.

[56] *Id*.

policy term according to its plain and ordinary meaning,[57] which can include consulting a dictionary.[58] According to the Merriam-Webster Dictionary, the relevant definition of "plumbing" is "the apparatus (such as pipes and fixtures) concerned in the distribution and use of water *in a building*."[59] The relevant definition of "plumbing" in the Oxford Dictionary is "[t]he pipes (originally of lead), fittings, and other apparatus used for water supply, sanitation, etc., *in a building*."[60] Construing the term "plumbing system" in accordance with its plain and ordinary meaning, the broken outdoor sprinkler line that caused the damage to the Property does not fall within the meaning of that term because it was outdoors on the Property.

Strengthening this plain meaning interpretation of "plumbing" is the canon of construction *noscitur a sociis*. Under this canon of construction, "a word is known by the company it keeps."[61] The words accompanying "plumbing system" in the Policy includes only indoor items or fixtures. For example, every child whose parent ever scolded him/her for leaving open the door to the house knows that no one pays to heat or cool the outside. Additionally, fire sprinklers are inside a building to protect a structure not to water a lawn. Moreover, the term

---

[57] *Utah Power & Light Co.*, 983 F.2d at 1553; *Alf*, 850 P.2d at 1274; *Vill. Inn Apartments*, 790 P.2d at 583.

[58] *Vill. Inn Apartments*, 790 P.2d at 583 (using a dictionary definition to determine the common definition of an insurance policy term).

[59] *Plumbing*, merriam-webster.com, https://www.merriam-webster.com/dictionary/plumbing (last visited Mar. 23, 2023) (emphasis added).

[60] *Plumbing*, oed.com, https://www.oed.com/view/Entry/146073?rskey=E6fC4b&result=2&isAdvanced=false#eid (last visited Mar. 23, 2023) (emphasis added).

[61] *See, e.g.*, *Yates v. United States*, 574 U.S. 528, 543 (2015); *see also ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 75 (S.D.N.Y. 1999) (applying *noscitur a sociis* to a contract).

"domestic appliance," means an appliance inside the home.[62] Given the plain meaning of "plumbing" and the company it keeps, a break in an exterior sprinkler line is not a Broad Named Peril under the Policy, and, consequently, damage therefrom is not covered.[63]

### 2. Even if an External Sprinkler Line Is Covered as a Plumbing System, Damage from Frozen Pipes Is Not a Covered Peril Under the Policy.

Even if the broken outdoor sprinkler line that allegedly caused the damage to the Property were part of a "plumbing system," the damage to the Property still would not be covered. The Broad Named Peril at issue has the definition section quoted above and excludes certain types of damage from its definition.[64] One of those exclusions provides that the Policy does "not pay for loss . . . caused by or resulting from freezing under this peril."[65] A frozen pipe is precisely the cause that Ms. Hovey claims here.[66] Thus, even if the broken outdoor sprinkler line that caused the damage to the Property meets the definition of a "plumbing system," damages from a frozen pipe cannot meet the definition of the relevant Broad Named Peril. For that additional reason, the

---

[62] *Domestic*, oed.com, https://www.oed.com/view/Entry/56663?redirectedFrom=domestic#eid (last visited March 23, 2023) (defining "domestic" to include, among other things, "[o]f or belonging to the home, house, or household").

[63] Ms. Hovey's opposition to Metropolitan's motion for summary judgment includes a declaration from Dean L. Webb ("Mr. Webb"), who is an engineer with several years' experience. ECF No. 28-1. Among other things, Mr. Webb opines that the outdoor sprinkler system "is part of the Property's plumbing." *Id*. at 2 of 15. However, the court disregards Mr. Webb's statement because contract interpretation is a question of law and not the stuff of expert opinion. *See, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 18-cv-2836, 2021 WL 6690337, at *3-6 (E.D. Va. Aug. 16, 2021) (excluding expert testimony regarding contract interpretation because such opinions on legal matters are not helpful to trier of fact). Therefore, notwithstanding Mr. Webb's unsubstantiated opinion to the contrary, "plumbing system" does not include the Property's exterior sprinklers.

[64] ECF No. 19-3 at 22 of 57.

[65] *Id*.

[66] ECF No. 28 at 14 (stating that damage was caused by a "frozen pipe breaking").

damage to the Property is not covered under the Policy. Accordingly, Metropolitan did not breach the Policy by denying the Claim.

B.  Even if the Cause of the Damage to the Property Were a Broad Named Peril Under the Policy, the Damage to the Property Falls Within Policy's Exclusions to Coverage.

Even if the cause of the damage to the Property were a Broad Named Peril under the Policy, the damage to the Property would be excluded from coverage under the Policy by: (1) the Earth Movement Exclusion and (2) Exclusion 3.[67] For those additional reasons, Metropolitan did not breach the Policy by denying the Claim.

1.  The Earth Movement Exclusion

The Earth Movement Exclusion excludes coverage under the Policy for the damage to the Property. The Earth Movement Exclusion provides that the Policy does not cover "loss caused by, resulting from, contributed to or aggravated by," among other things, "subsidence," "erosion," and "the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth, soil or land."[68] The Earth Movement Exclusion also provides that it "applies whether or not the earth movement is combined with water or caused by or results from human or animal forces or any act of nature."[69]

Along with its motion for summary judgment, Metropolitan has submitted Mr. Mikesell's report, in which he observed that "[t]he dwelling began to *settle after the date of loss* . . . and

---

[67] Ms. Hovey does not argue that the Earth Movement Exclusion or Exclusion 3 are ambiguous. Accordingly, the court does not address that issue.

[68] ECF No. 19-3 at 24 of 57.

[69] *Id.*

cause damages to the interior and exterior finishes"[70] and that "[a] cavity of the soil between the [sprinkler] box and the foundation had been *eroded* and a measuring tape could be inserted into the cavity to the west wall foundation."[71] In his analysis, Mr. Mikesell included the following discussion:

> As soils become saturated, the soil will turn to mud and lose load carrying capacity and the wetted soil particles will *rearrange* and become more uniform. This process *reduces the volume of the soils* which is considered *consolidation*. As the soils *consolidate*, anything bearing on the soils will *settle* and possibly result in damages. This appears to be what was occurring at the subject property based on the *settlement* that occurred at the dwelling at the location where the irrigation line break occurred.[72]

Near the end of his report, Mr. Mikesell concluded that "[t]he saturated soils lost load carrying capacity and consolidated which caused the dwelling to *subside* which resulted in multiple damages" and "recommended that a foundation stabilization contractor be engaged to remedy the *settlement*."[73]

The above-emphasized portions of Mr. Mikesell's report are more than sufficient to establish, as a matter of undisputed fact, that several of the conditions listed in the Earth Movement Exclusion are satisfied. Although Mr. Mikesell did not use the language for every condition in the Earth Movement Exclusion in his report, he did specifically reference subsidence, erosion, and settlement. Moreover, because Ms. Hovey's home was built on a "slab-

---

[70] ECF No. 19-8 at 3 of 32 (emphasis added).

[71] *Id.* at 5 of 32 (emphasis added).

[72] *Id.* at 7 of 32 (emphasis added).

[73] *Id.* at 8 of 32 (emphasis added).

on-grade foundation,"[74] erosion, subsidence, and settlement of the earth beneath the concrete

slab would impact the cement of the house's foundation and the structure built thereon.[75]

Additionally, Mr. Mikesell's references to the rearrangement, consolidation, and reduction in

volume of soil relate directly to certain conditions in the Earth Movement Exclusion, including

sinking, shifting, and contracting of soil.

 Ms. Hovey attempts to create a dispute of material fact with respect to Mr. Mikesell's

report in several ways. First, she argues that Mr. Mikesell opined only that the house on the

Property subsided and did not opine that the soil or earth subsided. That argument fails for two

reasons. First, logically, if the earth attached to the cement slab foundation sinks, the house will

too because foundations cannot float on the air. Second, even assuming a concrete slab

foundation does not sink when the earth beneath it does, Ms. Hovey's argument focuses on only

one of the excluding events in the Earth Movement Exclusion. Ms. Hovey's failure to address the

other portions of Mr. Mikesell's report discussing erosion, settlement, and other excluding events

dooms Ms. Hovey's argument.

 Second, Ms. Hovey attacks Mr. Mikesell's report by arguing, in essence, that Mr.

Mikesell was required to include the language of the various conditions from the Earth

---

[74] ECF No. 28 at 14.

[75] *What Is a Slab-On-Grade Foundation?*, ENGINEERED SOLUTIONS OF GEORGIA, https://www.esogrepair.com/articles/what-is-a-slab-on-grade-foundation/ (last visited Mar. 23, 2023) ("A slab-on-grade foundation—also known as a floating slab foundation—is a structural engineering practice in which the concrete slab that will serve as the foundation for a building or other structure is formed from a mold that is set into the ground. The concrete is then poured directly into the mold, leaving no space between the ground and the structure. This method of foundation construction is most commonly used in warmer climates where (1) seasonal freezing and thawing of the ground is less of a concern and (2) where there is no need for heat ducting to be installed beneath the floor of the building.").

Movement Exclusion in his report to conclusively establish that those conditions were present. Although true that Mr. Mikesell's report does not include the verbatim language of all the relevant excluding events, that does not mean, as Ms. Hovey suggests, that "there is nothing in [Mr. Mikesell's] report to support a finding that [Mr.] Mikesell concluded or opined that any of the conditions listed [in the Earth Movement Exclusion] caused [damage to the Property]."[76] To the contrary, as shown above, Mr. Mikesell rendered several opinions that specifically referenced language in certain excluding events and other opinions that went directly to other excluding events. Furthermore, Ms. Hovey fails to cite any authority for the proposition that Mr. Mikesell was required to use the exact language from the Earth Movement Exclusion to provide Metropolitan with a sufficient basis to deny the Claim. Accordingly, Ms. Hovey's attempt to discredit Mr. Mikesell's report fails.

Finally, Ms. Hovey argues that the opinions contained in Mr. Webb's declaration rebut Mr. Mikesell's report. That argument fails. Mr. Webb's 3-page declaration includes less than a full page of supporting facts, followed by just over two pages of conclusions, which almost exclusively indicate that the damage to the Property "was not caused by" certain events.[77] Importantly, the events Mr. Webb lists are taken verbatim from the Policy.[78] Such a conclusory and self-serving declaration is insufficient to create a disputed issue of material fact on a motion for summary judgment.[79]

---

[76] ECF No. 28 at 18.

[77] ECF No. 28-1 at 2-3.

[78] *Compare* ECF No. 19-3 at 23-25 of 57, *with* ECF No. 28-1 at 2-3.

[79] *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) ("Affidavits must contain certain indicia of reliability. Unsubstantiated allegations carry no probative weight in

Additionally, Mr. Webb's opinion substantiates Mr. Mikesell's on the points material to the Policy. Mr. Webb agrees that the "water irrigation supply line . . . broke due to freezing and saturated the soils under the footings, foundation walls and concrete floor slab on grade [i.e., on the earth] near the southwest corner of the home."[80] Mr. Webb then agrees that the "saturated soils lost load carrying capacity," which caused the foundation "to lose necessary support for the weight of the house."[81] Consequently, Mr. Webb states, "various areas of the house dropped up to as much as 5.4 inches . . . as manifested by structural and cosmetic damage with the house."[82] That is an excellent explanation of subsidence and sinking, which the Policy excludes from coverage. And Mr. Webb's statements to the contrary are logically unavailing.[83] Therefore, Ms.

---

summary judgment proceedings[; they] must be based on more than mere speculation, conjecture, or surmise. Information presented in the nonmovant's affidavit must be based on personal knowledge and [must set] forth facts that would be admissible in evidence. We do not consider conclusory and self-serving affidavits." (alterations in original) (quotations and citations omitted)); *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) ("To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." (quotations and citation omitted)).

[80] ECF No. 28-1 at 2 of 15.

[81] *Id.*

[82] *Id.*

[83] *Id.* at 3 of 15. Although Mr. Webb states that the damage was not caused by "earth movement," "subsidence," "the sinking," or "settling . . . of earth soil or land," the facts he states as the cause of the damage clearly show otherwise. Stating that a car's front fender was damaged because it hit another car but then saying that the damage to the car's front fender was not caused by a collision does not create a dispute of material fact; it merely presents immaterial semantics. Mr. Webb acknowledges as a fact that water from a broken sprinkler caused the earth beneath the house to no longer be able carry the weight of the home, and, consequently, the house "dropped." If that is not "sinking" or "subsidence," the court is not sure what is. To the extent Mr. Webb is relying on legal definitions to distinguish a dropping house from a sinking house, such a distinction is unavailing because Mr. Webb cannot provide an expert opinion about contract interpretation because it is unhelpful to the court. Therefore, as a matter of law or logic, Mr. Webb's opinion does nothing to create a dispute of material fact.

Hovey's reliance upon Mr. Webb's declaration to rebut Mr. Mikesell's report fails. Accordingly, Mr. Mikesell's report more than adequately provides undisputed facts indicating that the Earth Movement Exclusion applies to exclude coverage under the Policy for the damage to the Property. Consequently, Metropolitan did not breach the Policy by denying the Claim.

      2.  <u>Exclusion 3</u>

Additionally, Exclusion 3 precludes coverage under the Policy for the damage to the Property or any ensuing loss. The paragraph preceding Exclusion 3 provides that the Policy does "not insure . . . for any loss consisting of one or more of the items below," and those items include Exclusion 3.[84] That paragraph further provides that the Policy does "pay for any ensuing loss *unless the ensuing loss is itself excluded by any other provision of this policy*" and does "not insure for loss described in . . . Exclusion 3 . . . below *regardless of whether on or more of the following*: (a) directly or indirectly causes, contribute to or aggravate the loss; or (b) *occur before, at the same time, or after the loss or any other causes of the loss*."[85] Exclusion 3 provides that the Policy does "not cover loss or damage to the property . . . which results directly or indirectly from any of the following: . . . settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations, footings, supports, walls, floors, roofs, or ceilings."[86] Accordingly, Exclusion 3 operates to exclude any damage to the Property resulting from the enumerated events in Exclusion 3, regardless of whether those events occurred at the same time as or after the damage to the Property caused by the earth movement discussed above.

---

[84] ECF No. 19-3 at 24 of 57.

[85] *Id*. (emphasis added).

[86] *Id*. at 25 of 57.

As demonstrated above, the parties agree that the damage to the Property resulted from the soils beneath foundation being unable to support the weight of the house, which resulted in the foundation and the structure attached to it sinking (or "dropping" in Mr. Webb's view), which caused "structural and cosmetic damage" to the house.[87] Under Exception 3, even if all of this damage is considered an "ensuing losses" from the house's sinking, those damages are excluded from coverage under the exception's above-quoted language. Thus, even if the broken sprinkler line is a covered peril under the Policy, the Policy's exclusions preclude coverage of any of the damages to the Property. Therefore, Metropolitan did not breach the Policy by denying the Claim and is entitled to summary judgment on Ms. Hovey's cause of action for breach of contract.

## II.   Breach of the Covenant of Good Faith and Fair Dealing

Metropolitan did not breach the covenant of good faith and fair dealing because, as shown below, the Claim was fairly debatable. Because a duty of good faith and fair dealing "inhere[s] in *every* contractual relationship,"[88] parties to an insurance contract must conduct themselves accordingly. Where, as here, the insurance policy at issue is a first-party claim, this duty of good faith requires the insurer to: (1) "diligently investigate the facts" to determine "whether a claim is valid"; (2) "fairly evaluate the claim"; and (3) "act promptly and reasonably in rejecting or settling the claim."[89]

Although these are the standards of good faith for first-party insurers, Utah courts have also stated that if a claim is "fairly debatable," then "the insurer is entitled to debate it and cannot

---

[87] ECF No. 28-1 at 2 of 15.

[88] *Beck v. Farmer Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985) (emphasis added).

[89] *Id.*

be held to have breached the implied covenant [of good faith].”[90] “‘A “debatable reason,” for purposes of determining whether a first-party insurer may be subjected to bad-faith liability, means an arguable reason, a reason that is open to dispute or question.’”[91] “A claim is therefore fairly debatable as a matter of law only when there is a legitimate factual issue as to the validity of the insured’s claim, such that reasonable minds could not differ as to whether the insurer’s conduct measured up to the required standard of care.”[92]

Importantly, Ms. Hovey does not contest Metropolitan’s handling of the Claim under the standards set forth above. Indeed, Ms. Hovey contends that she “is not asserting that [Metropolitan] did not investigate the [C]laim.”[93] Additionally, Ms. Hovey fails to argue that the Claim was not fairly debatable. Instead, Ms. Hovey asserts “that [Metropolitan] is seeking to apply exclusions that don’t apply and is misconstruing [Mr.] Mikesell’s report to do so.”[94] By doing so, Ms. Hovey makes the same arguments directed at her claim for breach of contract, which conflate the two causes of action in a way that is not relevant to her claim for breach of the covenant of good faith and fair dealing. Nevertheless, as shown below, the Claim was fairly debatable, which means that Metropolitan is entitled to summary judgment on this claim.

*Village Inn Apartments* is instructive on, if not dispositive of, the issue of whether the Claim was fairly debatable. In that case, a ruptured water pipe on the premises of an apartment

---

[90] *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996).

[91] *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 34, 56 P.3d 524 (quoting 14 Lee R. Russ & Thomas F. Segalla, COUCH ON INSURANCE 3d § 204:28 (1999)).

[92] *M.A. v. Regence BlueCross BlueShield of Utah*, 2020 UT App 177, ¶ 17, 479 P.3d 1152 (quotations and citation omitted).

[93] ECF No. 28 at 20.

[94] *Id*.

building saturated the soil beneath the apartment building, causing the foundation of the building to settle almost 8 inches.[95] After the plaintiff filed a claim under its insurance policy issued by the defendant, the defendant denied the claim on the basis that the loss was outside the scope of the insurance policy's coverage, which was remarkably similar to the language of the Policy in the instant case.[96] The plaintiff filed suit against the defendant, alleging claims for breach of contract and breach of the covenant of good faith and fair dealing.[97] After the parties filed cross-motions for summary judgment, the trial court granted the defendant's motion.[98] The trial court found that the property damage was caused by "earth movement," which the trial court determined was excluded from coverage under the policy regardless of the underlying cause of the movement.[99]

On appeal, the plaintiff argued that, as a matter of law, "earth movement" referred to only natural phenomena and should not be construed to include the effects of a ruptured water pipe.[100] Alternatively, the plaintiff contended that "earth movement" was an undefined and ambiguous phrase in the policy and, consequently, was required to be strictly construed against the defendant.[101]

---

[95] *Vill. Inn Apartments*, 790 P.2d at 582.

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] *Id.*

[100] *Id.* at 583.

[101] *Id.*

23

The Utah Court of Appeals rejected the plaintiff's arguments.[102] The court noted that the policy did not define "earth movement," and, therefore, the court referred to the common definition of that phrase to acknowledge that, when viewed in isolation, the subparagraph of the policy discussing "earth movement" could be limited to natural phenomena.[103] However, after recognizing that all provisions of the policy had to be interpreted together, the court determined that the lead-in clause to the relevant exclusion "clearly exclude[d] from coverage any loss from earth movement, combined with water, *regardless of cause*."[104] Because the exclusion was "for earth movement loss from *any* cause," the court concluded that "earth movement" under the policy included both natural and human processes.[105] Therefore, the court held that the trial court correctly determined that the policy was unambiguous and that coverage was excluded under the policy as a matter of law.[106]

Not only are the facts of the instant case similar to the facts of *Village Inn Apartments*, but the Policy contains exclusion language similar to the exclusion in *Village Inn Apartments*. Indeed, both cases involve a broken water pipe causing earth movement that resulted in property damage. Further, like the exclusion in *Village Inn Apartments*, the introductory paragraph to the LOSSES WE DO NOT COVER section of the Policy provides:

> 1. **We** do not insure under any . . . coverage [(for LOSSES WE COVER and BROAD NAMED PERILS)] for any loss which would not have happened in the absence of one or more of the

---

[102] *Id.*

[103] *Id.*

[104] *Id.* (emphasis in original).

[105] *Id.* (emphasis in original).

[106] *Id.*

following excluded events. **We** do not insure for any such loss regardless of:

(a) the cause of the excluded event;

(b) other causes of the loss; or

(c) whether such causes acted at the same time or in any other sequence with the excluded event to produce or to contribute to the loss.[107]

Additionally, the Earth Movement Exclusion provides that it "applies whether or not the earth movement is combined with water or caused by or results from human or animal forces or any act of nature,"[108] and the introductory paragraph to Exclusion 3 provides that "**we** do not insure for loss described in . . . Exclusion 3 . . . regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss."[109]

Given the similarity in the facts and exclusion language in *Village Inn Apartments* and this case, as well as the holding of *Village Inn Apartments*, there was, at a minimum, "a legitimate factual issue as to the validity of the [Claim], such that reasonable minds could not differ as to whether [Metropolitan]'s conduct measured up to the required standard of care."[110] Thus, the Claim was fairly debatable, and, therefore, Metropolitan is entitled to summary

---

[107] ECF No. 19-3 at 22 of 57.

[108] *Id*. at 24 of 57.

[109] *Id*. at 24 of 57.

[110] *Regence BlueCross BlueShield of Utah*, 2020 UT App 177 at ¶ 17 (quotations and citation omitted).

judgment on Ms. Hovey's cause of action for breach of the covenant of good faith and fair dealing.

**ORDER**

Based upon the foregoing, the court GRANTS Metropolitan's motion for summary judgment.[111] Accordingly, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

DATED this 23rd day of March 2023.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[111] ECF No. 19.